UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JEFF ROBINSON, *et al.*,

    Plaintiffs,

vs.

WELLS FARGO BANK, N.A.,

    Defendant.

Case No. 3:17-cv-261

District Judge Walter H. Rice
Magistrate Judge Michael J. Newman

---

**ORDER AND ENTRY GRANTING DEFENDANT'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS (DOC. 14)**

---

This civil case is before the Court on a motion to compel attorney's fees discovery filed by Defendant Wells Fargo, N.A. ("Wells Fargo"). Doc. 14. Plaintiffs Jeff and Vera Robinson ("the Robinsons") filed a memorandum in opposition to Wells Fargo's motion. Doc. 15. Thereafter, Wells Fargo filed a reply. Doc. 17. Prior to the formal filing of Wells Fargo's motion, the Court held an informal discovery status conference by phone on February 5, 2018, during which the Court heard extensive argument from counsel for the parties. Doc. 12. Thereafter, the Court issued an order directing, *inter alia*, that Wells Fargo file a motion to compel the production of attorney's fee discovery. Doc. 13. The Court has carefully considered all of the foregoing, and Wells Fargo's motion is now ripe for decision.

**I.**

The facts set forth herein are from the allegations set forth in the Robinsons' complaint. Doc. 1. The Robinsons reside in a home in North Lewisburg, Ohio which is subject to a mortgage and note held by Wells Fargo. *Id*. at PageID 2. On April 29, 2005, the Robinsons executed an adjustable rate note to finance the purchase of the home, which is secured by a mortgage recorded in the Champaign County, Ohio Recorder's Office. *Id*. at PageID 3-4.

On March 24, 2014, the Robinsons applied for mortgage assistance from Wells Fargo, which approved the Robinsons for a trial payment plan under the Home Affordable Modification Program ("HAMP"). *Id*. at PageID 4. Pursuant to the HAMP trial, the Robinsons were required to make three monthly payments of $1,231.48 beginning on May 1, 2014 and ending on July 1, 2014. *Id*. After receipt of the three payments, Wells Fargo allegedly agreed to review the Robinsons for a permanent loan modification. *Id*. According to the Robinsons, they made the first payment in May 2014 by check, which Wells Fargo cashed. *Id*. Subsequently, Wells Fargo automatically withdrew the appropriate payments from the Robinsons' bank account in June 2014 and July 2014. *Id*. at PageID 5.

On or about July 22, 2014, Wells Fargo purportedly communicated via telephone to the Robinsons that: (a) their account was complete and was being sent to underwriting; (b) once underwriting finished, the Robinsons would receive a loan modification; (c) no payment was needed for August 2014; and (d) no further automatic withdrawals would be taken by Wells Fargo from the Robinsons' bank account. *Id*. According to the Robinsons, Wells Fargo did not complete any further withdrawals from their bank account after July 2014 and they successfully completed the HAMP trial payment plan in July 2014. *Id*.

The Robinsons allege that the HAMP guidelines required Wells Fargo to thereafter offer a permanent HAMP. *Id*. at PageID 5. However, according to the Robinsons, Wells Fargo never sent them notice of completion of the HAMP trial, notice of denial of their HAMP trial, or a loss mitigation application. *Id*. at PageID 5-6. The Robinsons allegedly called Wells Fargo numerous times attempting to get an update on their HAMP trial review but, according to them, Wells Fargo was unable to communicate that status. *Id*. The Robinsons allege that Wells Fargo did not review the Robinsons' HAMP trial for many months and, for reasons unknown, removed them from HAMP consideration in December 2014. *Id*.

In December 2014, Wells Fargo sent a notice of default to the Robinsons, at which time the Robinsons allegedly made a second request for HAMP assistance from Wells Fargo. *Id*. According to the Robinsons, they submitted updated financial information to Wells Fargo in early 2015. *Id*. In February 2015, the Robinsons also filed a complaint with the Consumer Financial Protection Bureau due to Wells Fargo's failure to provide the HAMP loan modification and honor its agreement. *Id*. On February 24, 2015, Wells Fargo purportedly determined that errors occurred with the review of the Robinsons' HAMP trial in July 2014, and Wells Fargo determined that the Robinsons should be re-offered the HAMP trial offer from March 2014. *Id*. However, on March 2, 2015, based on the Robinsons' updated financial information, Wells Fargo allegedly determined it would not be able to offer the previously approved March 2014 HAMP trial and thus denied the Robinsons' second HAMP assistance request. *Id*. at PageID 6-7.

The Robinsons communicated their concerns to Wells Fargo as to why the loan modification Wells Fargo had previously approved was never finalized. *Id*. at PageID 7. On March 12, 2015, Wells Fargo responded, stating that: (a) the Robinsons should have continued making payments indefinitely upon completion of the HAMP trial payments; (b) it is required to complete a final review once all trial payments have been made; (c) it was "unable to honor the previously offered HAMP modification;" and (d) the Robinsons should provide additional information regarding their alleged conversations with Wells Fargo in July 2014. *Id*.

On April 7, 2015, Wells Fargo sent a letter informing the Robinsons that their file was removed on December 29, 2014 due to their participation in what is known as the Hardest Hit Funds Program. *Id*. at PageID 8. Wells Fargo purportedly then offered the Robinsons a non-HAMP trial. *Id*. The non-HAMP trial allegedly contained materially different terms compared to the March 2014 HAMP. *Id*. According to the Robinsons, the non-HAMP trial was not as beneficial to them as the 2014 HAMP trial that they contend they should have received. *Id*. The

3

Robinsons allege that, due to Wells Fargo's failure to diligently process and evaluate their request for HAMP assistance, their mortgage loan was not modified. *Id*.

On April 17, 2015, Wells Fargo brought an action for foreclosure against the Robinsons in the Champaign County Court of Common Pleas (the "Foreclosure"). *Id*. Wells Fargo subsequently obtained a judgment against the Robinsons in the Foreclosure action and scheduled a Sheriff's sale of the home on August 11, 2017. *Id*. The Robinsons allege that, as a result of Wells Fargo's failures, they were forced to incur legal fees and expenses in opposing the Foreclosure at both the trial and appellate courts. *Id*. It is not clear from the Robinsons' allegations whether they ultimately lost their home. *Id*.

On August 3, 2017, the Robinsons filed a complaint in this Court against Wells Fargo alleging the following claims: (1) a violation of the Real Estate Settlement Procedures Act ("RESPA"), namely, 12 U.S.C. 1601, *et seq.*, Regulation X, 12 C.F.R. § 1024.40 and 12 C.F.R. § 1024.41; (2) breach of contract; and (3) multiple counts of fraud. *See id*. at PageID 8-19. With respect to their claims under RESPA, the Robinsons seek statutory damages, actual damages and attorney's fees. *Id*. at PageID 12. Regarding such fees, the Robinsons not only seek to recover their attorney's fees incurred as a result of prosecuting this federal action, but also seek the attorney's fees they incurred in the Foreclosure, which they seek as part of their claim for actual damages under RESPA. *See id*. In discovery, Wells Fargo seeks to determine the amount and reasonableness of these fees. The Robinsons and their counsel have refused to provide this discovery regarding fees, giving rise to the instant dispute.

## II.

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative

4

access to information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information may be discoverable even if not ultimately admissible into evidence at trial. *Id*.

Rule 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production or inspection" if a party fails to provide discovery responses. Fed. R. Civ. P. 37(a)(3)(B). The "proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Hendricks v. Hazzard*, No. 2:11-cv-399, 2013 WL 4052873, at *3 (S.D. Ohio Aug. 12, 2013) (internal citation omitted). "When the information sought appears to be relevant, the party resisting production has the burden of establishing that the information either is not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm." *Wagner v. Circle W Mastiffs*, No. 2:08-cv-431, 2013 WL 4479070, at *3 (S.D. Ohio Aug. 19, 2013) (citation omitted).

## III.

In this case, Wells Fargo seeks an order compelling from the Robinsons the production of unredacted copies of attorney fee invoices related to the Foreclosure action. Doc. 14 at PageID 63. Notably, Wells Fargo's motion does not seek to compel invoices for fees incurred in prosecuting this current action. *Id*. In addition, Wells Fargo seeks production by the Robinsons of the fee agreement related to the Foreclosure action. *Id*. In response, the Robinsons argue that: (1) Wells Fargo's motion is not ripe for review because they failed to exhaust extrajudicial means of resolving the dispute prior to filing their motion as required by Fed. R. Civ. P. 37(a)(1); (2) the requested information is protected by the attorney-client privilege; and (3) the requested

5

information is protected by the work product privilege. Doc. 15. The Court will address each of these issues in turn.[1]

With regard to the timing of Wells Fargo's motion and the exhaustion of extrajudicial efforts, the Court acknowledges that, under the Civil Rules, upon filing a motion to compel, the movant "must include a certification that [he or she] has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). As required by Rule 37, Wells Fargo's motion is accompanied by a declaration of counsel. *See* doc. 14-1. The Court previously found that the parties had "exhausted extrajudicial means for otherwise resolving such discovery dispute" and, therefore, ordered the filing of the instant motion to compel. Doc. 13. Accordingly, the Court finds the prerequisites required by Rule 37 satisfied and the Robinsons' argument in this regard to be without merit.

Next, the Court addresses the issue of attorney-client and work product privileges together. Because this case is before the Court on federal question jurisdiction, federal law governs issues of privilege. *See Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992). Information is protected by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998). The work product privilege "protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process." *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) (citing *Hickman v.*

---

[1] The Robinsons also contend, conclusorily, that "[t]he needs of Wells Fargo for the [requested] information is entirely disproportionate to its current needs in this case." Doc. 15 at PageID 146. The Robinsons, however, fail to elaborate on such contention and, therefore, their argument regarding proportionality is forfeited. Fed. R. Civ. P. 26(b)(1).

*Taylor*, 329 U.S. 495, 510-14 (1947)); *see also* Fed. R. Civ. P. 26(b)(3) (stating that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent))."

Generally, with regard to the attorney-client privilege, "the fact of legal consultation or employment, clients' identities, attorney's fees, and the scope and nature of employment are not deemed privileged." *Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985). Similarly, work product protection generally does not extend to fee agreements. *See Montgomery Cty. v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999); *Murray v. Stuckey's Inc.*, 153 F.R.D. 151, 153 (N.D. Iowa 1993). Based on the foregoing -- and absent more than a blanket assertion of privilege set forth by the Robinsons -- the Court finds privilege does not attach to the Robinsons' fee agreement with counsel. Insofar as privilege may extend to certain billing entries set forth in invoices relating to the Foreclosure action, any such claims of privilege have been waived as a result of the Robinsons' attorney's fees being placed directly at issue in this case. *HID Glob. Corp. v. Leighton*, No. 1:07 CV 1972, 2009 WL 10688914, at *1 (N.D. Ohio Jan. 20, 2009) (finding "that plaintiff has waived the attorney-client privilege and work product protection by placing its attorneys' fees at issue"). Given that the fees are at issue here and claimed as damages, such fees and the fee agreement are relevant and discoverable under Fed. R. Civ. P. 26(b).[2]

## IV.

Accordingly, based on the foregoing, Wells Fargo's motion to compel is **GRANTED**. Doc. 14. The Robinsons are **ORDERED** to produce the fee agreement related to the Foreclosure

---

[2] In addition, the fee agreement is relevant for the reasons and concerns set forth in *Barrett v. Green Tree Servicing*, 214 F. Supp. 3d 670, 675 (S.D. Ohio 2016) and *Barrett v. Green Tree Servicing, LLC*, No. 3:14-cv-297, 2016 WL 2585651, at *2 n.1 (S.D. Ohio May 4, 2016).

7

action, as well as unredacted billing statements related to work performed on their behalf in the Foreclosure action, within **14 days** from the entry of this order. If appropriate, the Court will entertain from Wells Fargo a motion for payment of expenses under Fed. R. Civ. P. 37(a)(5) if made within **14 days** from the entry of this order.

Aside from the production previously ordered by the Court (doc. 13),[3] this order does not compel production of detailed invoices and/or billing statements relating to work performed in furtherance of this present action. This order also does not address production of any separate fee agreement entered into between the Robinsons and counsel related solely to this present action.

**IT IS SO ORDERED.**

Date:  March 7, 2018                                    s/ Michael J. Newman
                                                        Michael J. Newman
                                                        United States Magistrate Judge

---

[3] The undersigned previously ordered the Robinsons to provide Wells Fargo with the following information every 90 days: (1) the number of hours worked on the case to date by each individual for whom Plaintiffs will seek fees; (2) the hourly rate for each individual; and (3) the total amount of attorney's fees accumulated in this case to date. Doc. 13. That directive is not impacted by this order.